Good morning. May it please the Court, my name is Peggy Sue Jergens and I'm representing Mr. Brailey on this appeal, and I will not be needing to reserve time for rebuttal. Your Honors, it's Mr. Brailey's position that the District Court erred when it failed to hold that the Federal Restoration of Rights Exemption under 921A.33 applies to Mr. Brailey. Mr. Brailey contends that he cannot be convicted under 922G.9 because he did have his civil law. Counsel, if we looked in his State Court record, would it show that he stands convicted of a misdemeanor? That's, yes, Your Honors, I understand that he is convicted of a third degree misdemeanor, I mean assault. And so he stands, he stands convicted of a misdemeanor and I believe it's conceded that it's a misdemeanor crime of violence. That was the way the plea was written, Your Honor, saying that conceded the facts based on the right to file this appeal and to, now he has a class A misdemeanor in Utah, but it's after that that his rights were restored is what his argument is, Your Honor. Well, I understand that, but in Utah, if he had never been charged with a felony initially, but had only been charged with the misdemeanor which he eventually stood convicted, if we'd charted where he ended up, would you have any argument available to you? In other words, does Utah ever take away the civil rights of a person who's convicted only of a misdemeanor? Your Honor, it was my client's position that here what he lost at that time was the ability to have, possess a firearm. And he, and That actually doesn't answer my question. If a person is initially convicted of a misdemeanor, of this exact misdemeanor in Utah, would they have had any civil rights removed as a result of that misdemeanor conviction? As I understand it, no, Your Honor. But what my client's position is, is that his ability to carry a firearm was one of the rights that was removed. And that's what he is saying was restored with the 2000 Utah change in law. And so what we're saying here is that at the time that he entered his aggravated assault third degree felony, he lost his right to sit on a jury and his right to possess a firearm. And then when he entered that, the motion to reduce his charge to the Class A misdemeanor that we're speaking of here, at that time, he still could not possess a firearm under the Utah law. And that it's that change in the law in 2000, which actually is his position that restored his rights. Did it restore his right to sit on a jury? Your Honor, that law change didn't, but it's his position that when he changed from pleading assault, the misdemeanor, the Class A misdemeanor, that he had his right preserved to sit on a jury. So it's a two-step process is what his argument is here. So part of it gets, the jury washes out when it becomes the misdemeanor. That's Mr. Bradley's argument, Your Honor. And he still at that point under Utah law was precluded from carrying a firearm, but then in 2000 they amended the law. That's correct, Your Honor. It's his contention that all of his rights now were, quote, restored by operation of the workings of the statute. That's correct, Your Honor. When I look at the statute as a whole, 921A.33, it appears to be directed towards an individual determination that this person should not be considered a criminal at all. It deals with pardons, it deals with expungement, and it also deals with the restoration of civil rights. Why shouldn't we read this to mean an individualized determination that the offense has essentially been wiped away, or that all indicia of the offense have been wiped away for this individual specifically? Your Honor, I think the question to your answer is in the Carone case that I've cited, the U.S. Supreme Court case, is that you can have by operation of law the restoration of civil rights. And I've cited the Carone case for that specific principle is that it doesn't have to be offender specific that you get your civil rights restored. And here, for Mr. Bradley's purposes, it was the act of the change of the law that restored his civil rights. And that proposition has been held true by the U.S. Supreme Court in the Carone case. Does that answer your question, Your Honor? I think I understand your position. And the government claims that the King and the Thomas cases from the Fourth and Fifth Circuits responsibly answer this question that's before the court. But again, the government's reliance on these cases is misplaced because the factual setting is different in those cases. Neither the King nor the Thomas case address the situation before the court here. In both of those cases, the state law at the time that those defendants went into prison said that they could carry a firearm. And then when they came out, voila, they said now our rights have been restored just because we've been in prison. And our state law says now we can carry them. And that's not the situation here, as Your Honors know. We have an actual change in the Utah law which restores his right to carry a firearm. And it's his position that he does fall under this exemption for the restoration of his rights and that the district court failed to note that in their order and that his conviction should be reversed. Thank you. You do not wish to use any time, Pruvo? No, Your Honor. You may please the court. My name is John Legend, and I represent the United States of America. Your Honors, this case shows the difficulty and the lack of a better word than convolutedness between the interplay of state laws with respect to misdemeanor crimes and domestic violence and the federal laws. And Mr. Braley's situation is really a unique one, but there is an answer. And the answer is what Judge Bryan came up with, that Mr. Braley is not allowed to have a firearm because he is a prohibited person, hadn't been convicted of a misdemeanor crime and domestic violence. And there are a number of ways to get to that. One of the ways is what was outlined in the brief which follows Judge Bryan's approach. The other is an approach that I heard being suggested a few minutes ago, and I'd like to elaborate a bit on that, which goes to what happened in 1993 when Mr. Braley was convicted of a felony. In 1993, when Mr. Braley was convicted of the felony, he was stripped of his right to serve on a jury. That's one of the core civil rights that the courts say has to be there for someone to have those rights restored. In 1997, when he went back and petitioned the courts to get his felony brought down from a felony to a misdemeanor, the court did that. But it didn't do anything about restoring his civil rights. And the reason we know that is if we look at the statute that made that happen, there is some language at the very end of it that says the statute may not be construed to preclude any person from obtaining or being granted an expungement of his record as provided by law. And the reason that's important is because in Utah the only way one can get a civil right restored is either through pardon or expungement. So that statute suggests that somebody who had the felony come down to a misdemeanor and had a right stripped away from him had to take an extra step to get that right restored. And Mr. Braley didn't do that. The record's clear. He's never applied for a pardon. He's never had an expungement. The judgment has never been set aside. And that right to not serve on a jury was taken or the right to serve on a jury was taken away from him. And in 2000, when the law changed, there's nothing in that. And the change in the law will just change the classification or the change of the prohibition on the firearms from someone who was convicted of a crime of violence to a felony or a violent felony. There's nothing in there that talks about restoration of civil rights. So to this day, it's the government's position that Mr. Braley does not have the ability to serve on a jury because he was stripped away of that right. And that core right has never been restored back to him. So just so I understand, if this issue were his challenge in Utah to be sworn to serve on a jury, your position is even today he would not be eligible for jury service because he hasn't had that prior expungement. Yes, Your Honor. He's done nothing to get that right back. And when we look at cases such as the Thomas King case and the Flowers case, each and every one of those courts talk about those three core civil rights, the right to serve on a jury, the right to full public office, the right to vote, as being critical to having your rights restored for purposes of the firearm statutes. Now, as I said, there are two ways to get to this result, and this is the one way. And this is the argument that we believe is a strong means to get there. Another means is the way that Judge Bryan got there, which is what the defense is suggesting. Somehow or other that when I was brought down to a misdemeanor, I never had my civil rights taken away. I never lost any civil rights. If that's the case, and you have to have those three civil rights restored in order to have a firearm down the line under the federal system, he can't do it. He just can't because he never had anything taken away from him. So nothing can be restored again. But what's interesting is when one looks at the history behind the Lautenberg Amendment, specifically that area of the exception, it talks about misdemeanors that take away civil rights and then restore them. The other day I did a quick survey of the court of a number of statutes to see what they're talking about. And you see States in which you have misdemeanors in which certain rights are taken away. For example, in Michigan, if somebody is convicted of a certain type of misdemeanor crime, he cannot vote as long as he's incarcerated. When he gets out, that right is given back to him. It is a specific statute that contemplates doing it. Or you have situations such as in the Caron case, such as in the — I'm sorry, the Lasky case, in which you've got an individual who gets — finishes a term and he gets a certificate, or something which the State specifically says, you've gotten all of your rights back. That kind of thing isn't in this case. So it's the government's position that Mr. Braley still remains to this day a prohibited person because he has been convicted of a misdemeanor crime of domestic violence, which nobody opposes. I mean, that's an uncontested fact in this case. The only question is whether the exception applies. And it's the government's position that the exception doesn't apply, and therefore we respectfully ask this Court to uphold Judge Ryan's decision and dismissing — refusing to dismiss the indictment. Thank you. Thank you. The case just argued is submitted for decision. We'll hear the next case, which is United States v. — you're going to help me with the name, but Bovink. Bovink. Thank you.
judges: Schroeder, Graber, Fisher